# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND (BALTIMORE)

Brenda Taite,

USDC- GREENBELT
'24 MAR 8 AM 11:53

      Plaintiff, pro se        Civil Action No. 1:24-cv-000327-MJM

    vs.

Express Primary Care, LLC,
Defendant

_____

Jury Demand

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff, Brenda Taite respectfully submits this opposition to Defendant Express Primary Care, LLC, of Dundalk, Maryland's motion to dismiss based on Federal Rule of Civil Procedure 12(b)(6). (Doc. 12-1). See ECF No. 12-1.

## BACKGROUND

Plaintiff Brenda Taite ("Plaintiff), is a Black American female who filed a complaint in the Baltimore, Maryland Circuit Court on December 6, 2023, in which she stated that Express Primary Care, LLC of Dundalk, Maryland unlawfully denied her medical care because of her race, which is Black American. The Defendant Express Primary Care of Dundalk removed the case from state court to federal court and the Plaintiff filed her first amended pleadings on February 13, 2024.

1

## FACTUAL ALLEGATIONS

On November 25, 2023, the Plaintiff went online and placed an appointment to see a health care provider at Express Care of Dundalk, Maryland because I was suffering from severe back pain because a 250-pound child had tackled me at my job and ran into me, thereby pushing me into a door that has caused me severe pain in my back and other areas of my body but on this particular day, I was experiencing back spasm and I could not sleep because I was in a lot of pain. (*Am Compl.* at ¶ 5)

I arrived at Express Care for my appointment at the time of eleven thirty that morning. I walked in and registered, and the front desk staff called my name. I walked over to the desk as I had done in the past and I stood on the side of the desk where Savannah was sitting. (*Id.* At ¶ 6)

I told the two front desk people who were Savannah and a rude fat white woman whom I would learn whose name was Jessica that I had been injured at work. Immediately, Jessica said, "Have you been here before, and I said yes. Jessica told me, "We are not going to see you because you have been here before, and we are not going to see you. You have to go see your primary care doctor or an orthopedic doctor." Here, Jessica did not review my prior visit to Express Primary Care, which was on September 10, 2023, for a workman's compensation injury in which I was not treated for my back. Jessica just acted on irrational racial discrimination against me as a Black American patient. (*Id.* At ¶ 7 & 8)

More than that, it is clearly stated on my discharge paperwork dated September 10, 2023, to return if I continue to have pain. Adriana, a supervisor with Express Primary Care told me that Jessica, Savannah, and Dominque did not follow the office protocol. I was already sick, and they made me feel worse with their racist treatment of me because I am Black. I replied that my primary care doctor's office is closed, and it can take months to see an orthopedic doctor. I am

unwell and I want to see a healthcare provider. Upon saying the latter statement, Jessica began to shout at me that I was not going to be seen. I asked her if she was a board-certified medical doctor who has a license to practice medicine with the state of Maryland and she replied no. I then told her that was what I thought. (*Id.* at ¶ 9-14)

I then told her that she had no right to tell me that I could not be seen by a healthcare provider. Jessica then pointed her finger at my face and told me to get out, and I told her that she was pointing her finger at me. Jessica then told me that I was loud and ignorant. I told Jessica that I was not ignorant, which I perceived as a code word for nigger because I am Black American. Jessica then replied that there was a sign on the door that if you are loud and ignorant, they can throw you out of the office. I replied I want you to try picking me up and throwing me out of the office. At that moment, Savannah walked back to the office and told me that I was going to be seen but they were going to have to bill my health insurance instead of Workmen's Compensation. I said that was fine with me because I was sick, and I needed to see a healthcare provider. I signed the electronic pad agreeing to the billing of my insurance for the visit. (*Id.* at ¶15-20).

After sitting there for about six or seven minutes, I was called by the nurse whose name was Dominique to come into the back office to be seen by a healthcare provider. Once there in the back office, I was shown what room to go to and I was given a cup to urinate in. I told her that I could not urinate, but Dominque encouraged me to try because I was having severe back pain. I went into the rest room but there was no success in urinating. I came back out and went into the room that she told me to go into. Later, Dominique came into the room, and I explained that I could not urinate, and I recited what I stated above to her. (*Id.* at ¶24-29).

3

Dominique responded that she had no control over the front desk and that it was her job to ensure that I had good experience in the back office. Dominque excused herself and came back and told me that the front desk staff was calling my Workmen's Compensation for approval of my visit which contravenes the Maryland Workmen's Compensation statute, which states that I can see any healthcare provider of my choosing. Dominique then left the room to get me some water because she told me that I needed to urinate because of the severe back pain. Upon Dominique's return, Savannah walked into the room and said that Workmen's Compensation did not approve my visit and they would have to bill my insurance, or I would have to pay over $250 or more to be seen by a healthcare provider. Dominique told Savanah that they could not bill my insurance because I would be charged with fraud. (*Id.* at ¶ 30-34)

After all, it was a Workmen's Compensation visit. Dominique, whose medical credentials I do not know, told me to leave. My workman's compensation provider states that Express Primary Care never contacted them about my visit to their office. At that point, I gathered my belongings and left the clinic. On November 28, 2023, Adriana, a manager with Express Care called me while I was at the Baltimore Circuit Court. I was in the process of researching to file this lawsuit.

Adriana told me that all three employees had given me the wrong information and that I should have been seen by a healthcare provider. I recited to her the facts stated in my complaint, and I ended our conversation with, please get back to me on how we can resolve this situation. I never heard back from her. The Maryland Department of Health does not regulate Express Care. Express Care is an unregulated healthcare provider in the State of Maryland, even though the entity receives Medicaid funds from the State of Maryland and Medicare from the federal government. Express Primary Care has accepted Medicare payments from me, and I have paid a $25 co-payment. Opposing counsel has argued in his Motion to Dismiss that Express Primary

4

Care does not accept Medicare and that is a gross misrepresentation of the facts. The Maryland Attorney General does not regulate Express Care because the office does not regulate the quality of healthcare. (*Id.* at ¶ 34-44)

## **STANDARD OF REVIEW**

A motion to dismiss brought according to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A complaint need only satisfy the standard of Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557).

In ruling on a motion to dismiss, a plaintiff's well-pleaded allegations are accepted as true and viewed in the light most favorable to him. *Twombly*, 550 U.S. at 555. Factual allegations, however, "must be enough to raise a right to relief above a speculative level." *Id.* "'[N]aked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 557). Although pro se pleadings are construed liberally to allow for the development of a potentially meritorious case, courts cannot ignore a clear failure to allege facts setting forth a cognizable claim. *Compare Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (explaining that pro se complaints are not held to the same pleading standard as those prepared

5

by lawyers) *with Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate.").

## ARGUMENT

**I.      Plaintiff Can Bring a Claim Under Section 2-1004 of the Maryland Health Code**

Count I of Plaintiff's Amended Complaint, which asserts a claim under Section 2-1004 of the Maryland Health Code, should not be dismissed because the health code clearly states **(b)** A person that is licensed or otherwise regulated by the Department or a unit in the Department may not discriminate against any person because of the person's race, color, religion, sex, age, national origin, marital status, sexual orientation, gender identity, or disability. (*Md. Code, HG § 2-1004*)

The Statute does not state that a private cause of action cannot be brought under the statute. Moreover, the Defendant's position that a private right of action is not provided by the statute goes against public policy. In addition, the Maryland Statute clearly states the following, **(2)** Prohibit discrimination concerning the provision of health care by any person, to protect and ensure the peace, health, safety, prosperity, and general welfare of all. (*Md. Code, HG § 2-1002*) Plaintiff does not lack standing to bring a cause of action under the statute. (*See. Id.*) Count I therefore should not be dismissed with prejudice because the statute is silent on the issue of a private cause of action.

"[T]he accepted rule [is] that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. at 45-46. In *Bell Atlantic Corporation v. Twombly,* 55 U.S. 544 (2007), the Court noted questions raised regarding the "no set of facts" test and clarified that "once a claim has been stated adequately, it may be supported by showing

6

any set of facts consistent with the allegations in the complaint," id. at 563. It continued: "Conley, then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." Id. In *Ashcroft* Opposition to Motion to Dismiss 1 Case 1:12-cv-01034-JEB-JRB-RLW Document 23 Filed 09/04/12 Page 1 of 8 v. *Iqbal,* 556 U.S. 662 (2009), the Court further elaborated on the test, including this statement: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.'" Id. at 1949 (citation omitted). Where a complaint is inadequate, leave to amend the complaint is common. See, e.g., *Butt v. United Brotherhood of Carpenters & Joiners of America,* No. 09–4285, 2010 WL 2080034 (E.D. Pa. May 19, 2010).

"[T]he accepted rule [is] that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. at 45-46. In *Bell Atlantic Corporation v. Twombly,* 55 U.S. 544 (2007), the Court noted questions raised regarding the "no set of facts" test and clarified that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," id. at 563. It continued: "Conley, then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." Id. In *Ashcroft* Opposition to Motion to Dismiss 1 Case 1:12-cv-01034-JEB-JRB-RLW Document 23 Filed 09/04/12 Page 1 of 8 v. Iqbal, 556 U.S. 662 (2009), the Court further elaborated on the test, including this statement: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.'" Id. at 1949 (citation omitted). Where a complaint is inadequate, leave to amend the complaint is

common. See, e.g., *Butt v. United Brotherhood of Carpenters & Joiners of America,* No. 09–4285, 2010 WL 2080034 (E.D. Pa. May 19, 2010). Moreover, "[a] complaint survives a motion to dismiss even '[i]f there are two alternative explanations, one advanced by [the] defendant and the other advanced by [the] plaintiff, both of which are plausible.'" *Banneker Ventures, LLC v. Graham,* 798 F.3d 1119, 1129 (D.C. Cir. 2015) (quoting Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011) (first bracket added)). Even if the defendant believes that its version will "prove to be the true one . . . that does not relieve defendant [] of [its] obligation to respond to a complaint that states a plausible claim for relief, and to participate in discovery." *Id.*

**II.     Count II of the Plaintiff's Complaint Should Not Be Dismissed Because Express Care Is Bound by the Equal Protection Clause of the Fourteenth Amendment and the Thirteenth Amendment.**

Count II of Plaintiff's Amended Complaint should not be dismissed because Express Care is bound by the Equal Protection Clause of the Fourteenth Amendment and the Thirteenth Amendment. In *Santa Clara County v. Southern Pacific Railroad* (1866), the Supreme Court held that the Fourteenth Amendment applied to corporations. Here Express Care of Dundalk is a Limited Liability Corporation (LLC) that is registered with the State of Maryland Secretary of State. In addition, the Unruh Civil Rights Act, adopted in 1959 and subsequently amended, outlaws discrimination based on age, ancestry, color, disability, national origin, race, religion, sex, sexual orientation, and similar characteristics. This law applies to all businesses, including housing and public accommodation.

Where a complaint is inadequate, leave to amend the complaint is common. See, e.g., *Butt v. United Brotherhood of Carpenters & Joiners of America,* No. 09–4285, 2010 WL 2080034 (E.D. Pa. May 19, 2010). Here, the Plaintiff's lawsuit is in the infancy stages and thus, she should be permitted to amend her complaint to include a violation of the Thirteenth Amendment, which does state that Congress has the power to regulate private conduct.

8

The Thirteenth Amendment, passed shortly after the American Civil War, prohibited "slavery and involuntary servitude." This is one of the few sections of the United States Constitution that applies to private conduct. An employer who forced someone to work until the employee had paid off a debt would violate the Thirteenth Amendment. Section 2 of the amendment gives Congress the "power to enforce this article by appropriate legislation." Shortly after passage of the Thirteenth Amendment, Congress passed several statutes providing every citizen "the same right, in every State or Territory, as enjoyed by white citizens" to engage in various activities. These activities included, among others, the right to purchase and lease property and the right to make and enforce contracts. For many years, the Supreme Court held that Congress did not have power under the Thirteenth Amendment to regulate private conduct. In the 1960's however, the Court reversed itself and held that Section 2 of the Amendment gave Congress the power to abolish "all badges and incidents of slavery." Since private discrimination based on race was viewed as a continuation of the harms of slavery, Congress had the power to prohibit private discrimination based on race. The Court held that under the two statutes passed pursuant to the Thirteenth Amendment, a landlord could not refuse to rent to a Black person, *Jones v. Alfred H. Mayer Co.,* and a private school could not refuse to admit a Black child, *Runyon v. McCrary.* In one sense, Congressional power under the Thirteenth Amendment is very broad, in that it can cover almost all kinds of private activities. (*See,* https://home.ubalt.edu/shapiro/rights_course/Chapter8text.htm#*:)*

### III. Counts III, IV, and V Should Not Be Dismissed The Claims Sufficiently Plead Claims Upon Which Relief Can Be Granted

The Plaintiff will first address Counts III and IV under Title VI of the Civil Rights Act of 1964. Counts three and four alleges that the Defendant, Express Primary Care, LLC discriminated against the Plaintiff on account of her race and in violation of Title VI of the Civil Rights of 1964, 42 U.S.C. Section 2000d. Title VI "prohibits discrimination based on race, color, or national origin by recipients of federal financial assistance." *Smith v. McCarthy*, **No. ELH-20-419, 2021 WL 4034193, at \*20** (D. Md. Sept. 3, 2021). "To state a claim under Title VI, the Plaintiff must plausibly allege that Defendant received federal financial assistance and engaged in intentional racial discrimination." *Glenn v. Wells Fargo Bank, N.A.*, No. PX 15-3058, 2017 WL 371956, at \*15 (D. Md. Jan. 26, 2017), *aff'd*, 710 Fed.Appx. 574 **(4th Cir. 2017).** Courts have long recognized that Title VI's prohibitions traditionally apply to entities-not individuals. *See, e.g., Farmer v. Ramsay*, 41 F.Supp.2d 587, 592 (D. Md. 1999) ("Title

9

VI was designed to prohibit discrimination by organizations receiving federal assistance."); *Pavlovic v. Univ. of Md. Balt. Cnty.*, No. MJG-13-983, 2013 WL 4775530, at *4 n.4 (D. Md. Sept. 4, 2013) (collecting cases); *Whitfield v. Notre Dame Middle Sch.*, 412 Fed.Appx. 517, 521 (3d Cir. 2011) (unpublished opinion) ("Individual liability may not be asserted under Title VI."). Here, the Plaintiff alleges that she was discriminated against by Express Care, LLC because she was refused medical treatment at their facility in Dundalk, Maryland. The Plaintiff was called "ignorant" by an employee of Express Care named Jessica, who pointed her finger at the Plaintiff's face and told her to get out, and she told her that she was loud and ignorant. (*See,* Amended Complaint, ¶ 15 &16) In addition, the Plaintiff was the intended beneficiary of the federally funded program.

Title VI prohibits a medical facility that receives federal funds from engaging in intentional discrimination. *See Ratliff v. Wake Forest Baptist Med. Ctr.*, No. 13-991, 2014 WL 197809, at *2 (M.D. N.C. Jan. 14, 2014) ("Title VI affords a cause of action to a patient who alleges racial discrimination in the care given by a medical facility that accepts *any* federal funds.") (emphasis added); *see also Carnell Const. Corp. v. Danville Redevelopment & Hous. Auth.*, 745 F.3d 703, 716 (4th Cir. 2014) (collecting cases where receipt of federal funds subjected non-government entities to Title VI's prohibitions). Express Care did engage in discriminatory treatment against the Plaintiff when she was refused medical care because of her race, African American. Some white patients were waiting for care at the same time as the Plaintiff and they were not subjected to the same deleterious racist treatment by Jessica, an employee of Express Care. Express Care did not contact my workmen's compensation provider and they refused to treat me because of my race, Black American, and not because of medical coverage issues. The Plaintiff was discriminated against by Express Care and has alleged facts of intentional discrimination.

Turning to Count Five Section 1557 of the Patient Protection and Affordable Care Act, which should not be dismissed because the federal statute clearly states that an individual shall not be excluded from participation in, be denied the benefits of, or be subject to discrimination on the grounds prohibited under Title VI of the Civil Rights Act of 1964, 42 USC Section 2000d e seq. It is well settled, of course, that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). However, the plaintiff is not required to "set out in detail the facts upon which he bases her claim. To the contrary, all the Rules require is "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id*. at 47, 78 S.Ct. 99. In evaluating a motion to dismiss under Rule 12(b)(6), the court must accept the well-pled allegations of the complaint as true and construe all facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff, *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Circuit 1997).

## CONCLUSION

For the foregoing reasons, the Court should not dismiss Plaintiff's Counts I, II, III, IV, and V. The Plaintiff's amended complaint alleges sufficient facts to support a prima facie case under the Five Counts. Notice pleading is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues." *Conley,* 355 U.S. at 47-48, 78 S. Ct. 99.

Dated: March 6, 2024

Respectfully submitted,

Brenda Taite
1420 Merritt Blvd. Unit 404
Dundalk, Maryland 21222
Btaite3889@aol.com
(251) 593-0390

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that on this 6th day of March 2024, a copy of Plaintiff's Objection to Defendant's Motion to Dismiss was mailed postage prepaid to Counsel of Defendant, Express Primary Care, LLC, who are Donald E. English, Jr. and Andrew T. Will, at Jackson Lewis, P.C., 2800 Quarry Lake Drive, Suite 200, Baltimore, Maryland 21209.

Brenda Taite

March 6, 2024