IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| BRENDA TAITE, | * | |
| Plaintiff, | * | |
| v. | * | Civ. No.: MJM-24-327 |
| EXPRESS PRIMARY CARE, LLC, | * | |
| Defendant. | * | |

* * * * * * * * * *

**MEMORANDUM OPINION**

Plaintiff Brenda Taite ("Plaintiff"), pro se, filed this civil action against defendant Express Primary Care, LLC ("Defendant"), alleging violations of Md. Code Ann., Health–Gen. § 2-1004 (Count I); the Fourteenth Amendment of the U.S. Constitution (Count II); 42 U.S.C. § 18116 (Count III); Title VI of the Civil Rights Act ("Title VI"), 42 U.S.C. § 2000d, *et seq.* (Count IV); and Section 1557 of the Patient Protection and Affordable Care Act ("ACA") (Count V). This matter before the Court is on Defendant's Motion to Dismiss Plaintiff's Amended Complaint (the "Motion"). The Motion is ripe for disposition, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons set forth below, the Court shall grant Defendant's Motion.

I. **BACKGROUND**

Plaintiff is a Black American resident of Dundalk, Maryland. Am. Compl., ¶¶ 1, 3.

On November 25, 2023, after suffering a workplace injury, Plaintiff sought treatment at Express Care of Dundalk, a healthcare clinic operated by Defendant. Am. Compl., ¶ 5. Plaintiff had previously visited the clinic on September 10, 2023, for a separate workplace injury, and she received discharge paperwork instructing her to return "if pain continued." *Id.* ¶¶ 6, 8–9. Despite

1

the discharge instructions, and the fact that Plaintiff had actually visited for a second workplace injury, a front desk assistant named Jessica told Plaintiff that she could not be seen a second time for the same work-related injury. *Id.* ¶¶ 7–8. Jessica suggested to Plaintiff that she see her primary care physician or an orthopedic doctor instead. *Id.* ¶ 8. Plaintiff attempted to explain that her primary care physician's office was closed and that it could take months to see an orthopedic doctor, but Jessica "began to shout . . . that [Plaintiff] was not going to be seen." *Id.* ¶¶ 11–12. An argument ensued, during which Jessica called Plaintiff "loud and ignorant." *Id.* ¶¶ 12–15. Plaintiff interpreted the assistant's treatment of her as racially discriminatory and her use of "ignorant" as code for the n-word, a racial slur. *Id.* ¶ 16.

Eventually, a second assistant named Savannah suggested billing the visit to Plaintiff's insurance rather than to worker's compensation. *Id*. ¶¶ 17–18. Plaintiff agreed. *Id*. ¶¶ 19–20. Plaintiff was then shown to a room by a nurse, Dominique, who informed her that the front desk staff members were still calling her workers' compensation provider to seek approval of her visit. *Id.* ¶ 31. Later, Savannah returned to tell Plaintiff that her workers' compensation provider did not approve the visit, so either the clinic would have to bill Plaintiff's insurance provider or she would have to pay $250. *Id.* ¶ 33. Hearing this, Dominique pointed out that billing Plaintiff's insurance for a work-related injury would constitute fraud, *id.* ¶¶ 34–35, and asked Plaintiff to leave, which she did, *id.* ¶¶ 35, 37.

Plaintiff alleges, however, that her workers' compensation provider told her that no one from Express Care had actually called. *Id.* ¶ 36, On November 28, 2023, an Express Care supervisor contacted Plaintiff to say that all three employees had given her the wrong information and that she ought to have been treated. *Id.* ¶ 40.

Plaintiff filed her initial complaint against Defendant in the Circuit Court of Maryland for Baltimore County on December 6, 2023. ECF 2. On February 1, 2024, Defendant removed the action to this Court. ECF 1. On February 7, 2024, Defendant filed a motion to dismiss. ECF 5.[1] Plaintiff filed an Amended Complaint on February 13, 2024. ECF 11. On February 27, Defendant filed a Motion to Dismiss. ECF 12. Plaintiff filed a Response in Opposition, ECF 14, and Defendant filed a Reply in Support, ECF 15. The Motion remains pending.

## II.    STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A complaint need not include "detailed factual allegations," but it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555–56 (internal quotation marks omitted).

Furthermore, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 10 (2014) (per curiam). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of

---

[1]    Defendant's initial motion to dismiss is denied as moot because Plaintiff's Amended Complaint has superseded her initial complaint.

the elements of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (cleaned up). Pro se pleadings are construed more generously, but courts may not ignore a clear failure to allege facts setting forth a cognizable claim. *Hughes v. Rowe*, 449 U.S. 5, 9–10 (1980) (citations omitted). When considering a motion to dismiss, a court must take the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). At the same time, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## III. ANALYSIS

### A. Count I

In Count I, Plaintiff alleges that Defendant's denial of services constituted racial discrimination in violation of Md. Code Ann., Health-Gen. § 2-1004.

Section 2-1004 provides: "A person that is licensed or otherwise regulated by the [Maryland Department of Health] or a unit in the Department may not discriminate against any person because of the person's race, color, religion, sex, age, national origin, marital status, sexual orientation, gender identity, or disability." The plain language of the statute does not create a private right of action, however. "A frequently stated principle of statutory construction is that when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies." *Herman v. Lincoln Nat'l Life Ins. Co.*, Civ. No. AW-11-03378, 2012 WL 1999879, at *3 (D. Md. June 4, 2012) (quoting *Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453, 458 (1974)); *see also Botany Worsted Mills v. United States*, 278 U.S. 282, 289 (1929) ("When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode.") (citation omitted).

In *Herman*, the Court held that the Maryland Unclaimed Property Act does not provide for a private right of action because it expressly authorizes the Maryland State Comptroller to enforce its provisions. 2012 WL 1999879, at *3 (citing Md. Code Ann., Com. Law § 17–323(a)). Similarly, the Maryland Health Article provides that "the Secretary or a unit of the [Maryland Department of Health] has exclusive jurisdiction to enforce by administrative action the laws of the State as provided for under this article and the Health Occupations Article," and that in discrimination cases, "[t]he Commission on Civil Rights has concurrent jurisdiction . . . ." Md. Code Ann., Health-Gen § 2-1003(a). The article does not provide that a private individual may bring an action to enforce the anti-discrimination provision in § 2-1004.

Accordingly, the Court finds that § 2-1004 does not provide for a private right of action. Count I fails to state a legally cognizable claim for relief and must therefore be dismissed.[2]

### B. Count II

In Count II, Plaintiff alleges that Defendant violated her equal protection rights under the Fourteenth Amendment.[3]

---

[2] Plaintiff argues that declining to recognize a private right of action in Md. Code Ann., Health-Gen § 2-1004 would contravene public policy, ECF 14 at 6, but she fails to explain why that is so, identify what public policy in particular might be contravened, or cite any authority in support of her argument.

[3] In her Response in Opposition to the Motion to Dismiss, Plaintiff raises a new claim under Count II for violation of the Thirteenth Amendment, and she asks the Court to construe this addition as an amendment to her Amended Complaint. ECF 14 at 9–10. The Court will construe that portion of the opposition as a proposed amendment, given the need to construe pro se pleadings liberally. *See Rush v. Am. Home Mortg., Inc.*, Civ. No. WM-N07-854, 2009 WL 4728971, at *3 (D. Md. Dec. 3, 2009) (citing *Smith v. Blackledge*, 451 F.2d 1201, 1202–03 (4th Cir. 1971), and other cases).

Nonetheless, the proposed amendment is denied as futile. *See Laber v. Harvey*, 438 F.3d 404, 426–27 (4th Cir. 2006) (noting that a proposed amendment should be denied where it is prejudicial to the opposing party, made in bad faith, or futile) (citations omitted). It is well established that the Thirteenth Amendment to the U.S. Constitution does not provide a private right of action. *See, e.g.*, *Smith v. Kentucky*,

Title 42, United States Code, Section 1983 allows a plaintiff to sue any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States]." To bring an action under § 1983, a plaintiff must allege that (1) a right secured by the Constitution or laws of the United States was violated, and that (2) the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Peltier v. Charter Day Sch., Inc.*, 37 F.4th 104, 115 (4th Cir. 2022), *cert. denied*, 143 S. Ct. 2657 (2023) (citation omitted).

The phrase "under color of state law" is an element that "is synonymous with the more familiar state-action requirement—and the analysis for each is identical." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 929 (1982)). A person acts under color of state law "only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Polk Cnty. v. Dodson*, 454 U.S. 312, 317–18 (1981) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). "The under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (cleaned up).

---

36 F.4th 671, 674–76 (6th Cir. 2022), *cert. denied*, 143 S. Ct. 213 (2022); *Doe v. Siddig*, 810 F. Supp. 2d 127, 135–36 (D.D.C. 2011) (collecting cases).

Plaintiff's citation to the Unruh Civil Rights Act, ECF 14 at 8, to the extent it raises a new claim, is likewise futile. The Unruh Civil Rights Act is a California law that only applies within the State of California, *see Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083 (C.D. Cal. 2015), and all events in the Amended Complaint are alleged to have occurred in Maryland, *see* Am. Compl.

The Amended Complaint fails to allege any violation of federal law by a person "clothed with the authority of state law." *Dodson*, 454 U.S. at 317–18. Plaintiff's allegation that Defendant accepts federal Medicare and Medicaid payments, Am. Compl., ¶¶ 42–43, does not render Defendant a state actor. *See Carter v. Norfolk Cmty. Hosp. Ass'n, Inc.*, 761 F.2d 970, 972 (4th Cir. 1985) (hospitals are not state actors merely because they accept federal monies and are subject to federal regulation).

Accordingly, the Court finds that Count II fails to state a plausible equal protection claim and must therefore be dismissed.[4]

C. **Counts III, IV, and V**

In Counts III, IV, and V of the Amended Complaint, Plaintiff alleges that Defendant discriminated against her on the basis of race in violation of 42 U.S.C. § 18116, Title VI, and § 1557 of the ACA, respectively.

The Court construes these counts as asserting a single claim. First, section 1557 of the ACA was codified into law as 42 U.S.C. § 18116. *See, e.g.*, *Basta v. Novant Health Inc.*, 56 F.4th 307, 313 (4th Cir. 2022). Second, § 18116(a) reads as follows:

> [A]n individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.) . . . be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance . . . .

---

[4] Plaintiff argues in her Response in Opposition to the Motion that *Santa Clara County v. Southern Pacific Railroad Co.* stands for the proposition that the Fourteenth Amendment applies to corporations, *see* ECF 14 at 8, but this is a misunderstanding. The U.S. Supreme Court in *Santa Clara County* held not that corporations are bound by the Fourteenth Amendment, but rather that they benefit from its protections. 118 U.S. 394, 409 (1886).

Because Plaintiff alleges discrimination on the basis of race, "[t]o state a claim for a Section 1557 violation under the ACA, [she] must allege facts adequate to state a claim under [Title VI]." *Lucas by & through Lucas v. VHC Health*, No. 122CV00987PTGJFA, 2023 WL 5615970, at *3–4 (E.D. Va. Aug. 30, 2023) (citing *Basta*, 56 F.4th at 314–15).

Title VI provides: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. To bring a Title VI claim, a plaintiff must allege that the defendant (1) received federal funding and (2) engaged in intentional racial discrimination. *Glenn v. Wells Fargo Bank, N.A.*, Civ. No. PX-15-3058, 2017 WL 371956, at *15 (D. Md. Jan. 26, 2017), *aff'd*, 710 F. App'x 574 (4th Cir. 2017) (citing *Farmer v. Ramsay*, 41 F. Supp. 2d 587, 592 (D. Md. 1999)).

Courts have held that medical facilities receiving Medicare and Medicaid payments are subject to Title VI. *See Ratliff v. Wake Forest Baptist Med. Ctr.*, No. 1:13CV991, 2014 WL 197809, at *2 (M.D.N.C. Jan. 14, 2014) (citing *United States v. Baylor Univ. Med. Ctr.*, 736 F.2d 1039, 1044–46 (5th Cir. 1984), and *Dorer v. Quest Diagnostics Inc.*, 20 F. Supp. 2d 898, 899–900 (D. Md. 1998)); *Evans v. 7520 Surratts Rd. Operations, LLC*, Civ. No. PX-21-01637, 2021 WL 5326463, at *3 (D. Md. Nov. 16, 2021) (residential treatment facility that accepted Medicare and Medicaid funding subject to Title VI) (citations omitted). Plaintiff alleges in her Amended Complaint that Defendant, operator of a healthcare clinic, is a recipient of federal Medicaid and

Medicare funding. Am. Compl., ¶¶ 42–43, 53.[5] Plaintiff has thus sufficiently alleged that Defendant is recipient of federal funds.

Plaintiff alleges that a front desk assistant at Express Care Dundalk treated her discourteously and called her "ignorant," which she interpreted as a code for the n-word. Am. Compl., ¶¶ 15–16. The word "ignorant" means "lacking knowledge or awareness in general; uneducated or unsophisticated"; "discourteous or rude"; and "easily angered[.]" *Ignorant*, New Oxford American Dictionary (3d ed. 2010). Plaintiff offers no reason to believe that, by itself, the term carries any racially discriminatory meaning or connotation or serves as a proxy for the n-word. And Plaintiff fails to offer any facts to suggest that the assistant's remark was racially motivated. Even if the Court were to accept Plaintiff's interpretation of the term "ignorant," "a lone statement of racial animus is not sufficient to plead a plausible claim of race discrimination." *Lucas*, 2023 WL 5615970, at *4; *see McNeal v. Montgomery Cnty*, 307 F. App'x 766, 774 (4th Cir. 2009) ("To prove discriminatory animus, the derogatory remark cannot be stray or isolated and unless the remarks upon which plaintiff relies were related to the [] decision in question, they cannot be evidence of discrimination.") (cleaned up). Here, the alleged discriminatory remark was uttered during an argument and under circumstances that do not support a reasonable inference that Plaintiff was denied treatment because of her race. Moreover, clinic staff members' rude and discourteous behavior toward Plaintiff does not support a reasonable inference of race discrimination. *Cf. Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 798 (8th Cir. 2011) (in employment

---

[5] Defendant's invocation of *Carbaugh v. Aurora Health Mgmt.*, Civ. No. GLR-19-313, 2019 WL 6841071 (D. Md. Dec. 16, 2019), is misplaced. There, the Court dismissed the plaintiff's Rehabilitation Act (which also has a federal funding requirement) claim because the plaintiff (who was represented by counsel) only alleged that the defendant was a recipient of federal Medicare and Medicaid monies in her opposition to the motion to dismiss and not in her actual complaint. *Id.* at *3. Here, Plaintiff alleged federal funding in her Amended Complaint. Am. Compl., ¶¶ 42–43, 53.

discrimination context, "the allegation that [recruiter] treated [plaintiff] with a 'rude and sour attitude' does not support an inference of discriminatory animus").

Although Plaintiff states in her opposition brief that white patients at Express Care received treatment before she did and were not "subjected to the same deleterious treatment by Jessica," ECF 14 at 10, these conclusory allegations are insufficient to show that the disparate treatment was plausibly based on race, *see Evans*, 2021 WL 5326463, at *4 (D. Md. Nov. 16, 2021) (allegation of disparate treatment without facts to support intentional discrimination was insufficient to sustain Title VI claim). The allegations in the Amended Complaint indicate that Defendant's decision not to treat her was not based on race, but rather on clinic staff members' mistaken belief that Plaintiff was seeking treatment for an injury for which she had already been seen. Am. Compl., ¶ 8. *Cf. McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 588 (4th Cir. 2015) (finding, in the Title VII employment discrimination context, that intentional discrimination was not plausible in the face of an "obvious alternative explanation").

Because Plaintiff fails to allege a plausible claim of race discrimination in violation of Title VI, Counts III through V must be dismissed.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss shall be granted, and the Amended Complaint shall be dismissed without prejudice.

A separate Order will follow.

 June 27, 2024 
Date

Matthew J. Maddox
United States District Judge